# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| MARGARET KRAUSE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 13-CV-02109-HEA |
| | ) |
| AT&T OPERATIONS, INC., | ) |
| | ) |
| Defendant. | ) |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment, [Doc. No. 26]. Plaintiff opposes the motion. For the reasons set forth below, the motion is granted.

### Facts and Background

From 2003 until March 2012, Plaintiff worked in a first-level management position for AT&T as a Sales Coach. As a Sales Coach, Plaintiff was responsible for supervising a team of Senior Consultants who sold a variety of AT&T products and services over the phone at a call center. Plaintiff's duties included coaching and monitoring the sales representatives on her team, making sure they used proper etiquette on the phone, listening to and grading her representatives' calls with customers, and making sure her representatives received training to do their job.

AT&T has a Code of Business Conduct ("COBC") policy. Plaintiff received a copy of the COBC policy, and she had received training on it. AT&T's COBC policy states: All AT&T Employees:

At AT&T, how we do business is just as important as what we do.

> Our reputation for doing the right thing is one of our most valuable assets. Our customers believe in our products and services, and they trust us. It's up to each of us, every day, to protect that trust. Living up the highest standards of honesty, integrity and respect is the most important commitment we can make - to each other, our customers, our business partners and our shareholders.
>
> ***
>
> The Code of Business Conduct puts our values into action. It's a guide to help us make the right decisions every day. I expect all employees, at every level and position, to share this commitment to the Code.

Thank you for living up to the high standards of AT&T. Randall Stephenson Chairman and CEO.

AT&T's COBC policy also states:

We are honest and act with integrity.

This statement applies to everything we do at AT&T. Our daily interactions should start and end with honesty and integrity. We hold ourselves and each other to a high standard of ethical behavior. Many groups - shareholders, customers, communities, suppliers, public authorities, our fellow employees - are able to trust what we say and do. We take personal responsibility for meeting the goals we share and keeping our commitments.

AT&T's COBC policy also states:

We manage the Company's records and information appropriately.

We create, use, retain and dispose of our business records and information in a careful manner according to the Company's Records and Information Management policies and schedules.

AT&T's COBC policy also states:

We respect the Code, and apply it to our work every day.
As AT&T employees, we are part of a long tradition of employees who have conducted themselves in an ethical manner that reflects positively on the Company. We focus on doing the right thing - upholding our shared commitment to comply with laws, regulations and internal policies. Each employee is responsible for being familiar with the information in this Code, and for following the Code, and the Company's policies and guidelines. We understand that violations may result in discipline, up to and including termination of employment.

Plaintiff understood that AT&T takes its COBC policy seriously, and that a COBC violation would result in an employee being disciplined, up to and including termination of employment.

In 2012, a union representative for Mark Weisberg, a Consultant on Plaintiff's team, told Plaintiff's supervisor, Jennifer Gardner, that he found that Plaintiff documented a coaching development session on Weisberg for a date when he was not at work.

Plaintiff documented that she coached Weisberg on December 21, 2011. Weisberg did not work on December 21, 2011. Plaintiff documented that she coached Weisberg on January 18, 2012. Weisberg did not work on January 18, 2012.

Gardner believes Plaintiff inaccurately scored two calls without listening to the call. Gardner does not believe Plaintiff made honest mistakes when she made these documentation errors. Gardner believes Plaintiff falsified company documents. Gardner made the decision to terminate Plaintiff's employment. Gardner terminated Plaintiff because she believed Plaintiff falsified company documents, which is a violation of the COBC.

Plaintiff's employment with AT&T ended in March 2012.

Plaintiff alleges she has Post-Traumatic Stress Disorder ("PTSD").

In 2011 and 2012, Plaintiff took three leaves of absences: from April 2011 to June 2011, from August 1, 2011 to October 24, 2011, and from January 23, 2012, to March 7, 2012 (Pl. Dep. 288).

Due to Plaintiff's PTSD, and as of around October 2011, Plaintiff claims she was not capable of performing the essential job functions of the Sales Coach.

## Discussion

In determining whether summary judgment should issue, the Court must view the facts and inferences from the facts in the light most favorable to the nonmoving party, here Plaintiff. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine dispute as to any material fact, and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby,*

*Inc.,* 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e).

Count I of Plaintiff's complaint alleges that Defendant discriminated against her on the basis of her disability—Post Traumatic Stress Disorder—by terminating her employment. Plaintiff also asserts that Defendant did not provide her with an accommodation for her disability. Defendant argues that Plaintiff was not disabled within the meaning of the Missouri Human Rights Act (MHRA), and that even if she was disabled, her disability was not a contributing factor to her termination.

Under the MHRA, an employer is prohibited from discharging or otherwise discriminating against an individual on the basis of "race, color, religion, national origin, sex, ancestry, age or disability." Mo.Rev.Stat. § 213.055. The Act defines "discrimination" as "any unfair treatment ... based on disability ...," Mo.Rev.Stat. § 213.010(5), and it defines "disability" as "a physical or mental impairment which substantially limits one or more of a person's major life activities, ... which with or without reasonable accommodation does not interfere with performing the job...." Mo.Rev.Stat. § 213.010(4). A claim of discrimination under the MHRA survives summary judgment "if there is a genuine issue of material fact as to whether ...

disability was a 'contributing factor' in the [defendant's] termination decision." *Daugherty v. City of Maryland Heights,* 231 S.W.3d 814, 820 (Mo.2007) (en banc). "A 'contributing' factor has been defined as one 'that contributed a share in anything or has a part in producing the effect.'" *Williams v. Trans States Airlines, Inc.,* 281 S.W.3d 854, 867 (Mo.Ct.App.2009) (citations omitted). This analysis involves a determination of "whether the record shows two plausible, but contradictory, accounts of the essential facts and the 'genuine issue' in the case is real, not merely argumentative, imaginary, or frivolous." *Daugherty,* 231 S.W.3d at 820 (citation omitted).

In this case, Plaintiff's complaint can only survive summary judgment if there is genuine dispute of material fact as to whether her disability was a contributing factor in her termination.

Plaintiff claims that her supervisor's actions toward her caused her PTSD. Even after there was a change in Plaintiff's supervisor, she continued to experience PTSD symptoms. She admitted that she could not continue working in the call center environment and no accommodations could have been made to allow her to continue working in the call center. Defendant did not prevent her from seeking other positions within the Defendant organization; Plaintiff did actively look for other positions with the company, but was not successful in transferring from the call center.

Because Plaintiff admitted that she could not continue working in the Call Center, Defendant argues that Plaintiff fails to meet the definition of "disabled" under the act. Furthermore, even if Plaintiff is "disabled" under the MHRA, she has not provided evidence demonstrating that such disability was a contributing factor to her termination. Defendant has provided a legitimate, non-discriminatory reason underlying its decision to terminate Plaintiff's employment from her position in the call center. Defendant has produced evidence that Plaintiff documented that she coached employee Weisberg on December 21, 2011. Weisberg did not work on December 21, 2011. Plaintiff also documented that she coached Weisberg on January 18, 2012. Weisberg did not work on January 18, 2012. Additionally, Plaintiff's supervisor discovered that Plaintiff had inaccurately scored two calls, which the supervisor believed was because Plaintiff had not listened to them. All of these actions were considered violations of the Code of Business Conduct.

In her deposition, Plaintiff admitted that she was unable to continue full time in the Call Center and that she didn't think she could work in the call center at all. Moreover, Plaintiff does not dispute the accuracy of the reports of incorrect dates listed for the coaching sessions.

Additionally, although Plaintiff argues that a reasonable accommodation would have been a position in a different department, it is not incumbent upon the

employer to find another job for an employee who is incapable of performing the job she has.

> Reasonable accommodation does not require an employer to find another job for an employee who is unable to perform the job he was doing, but an employer cannot deny an employee alternative employment opportunities reasonably available under the employer's existing policies. *Berkowski v. St. Louis County Bd. of Election Comm'rs*, 854 S.W.2d 819, 826-27 (Mo. Ct. App. 1993) (declining to decide whether reference to one occasion when an employer transferred a disabled employee is sufficient to create an inference of a policy). A plaintiff must show not only that an alternative position was vacant, but that he was qualified for that position. *Id.* at 827.

*Snyder v. ICI Explosives USA, Inc.*, 938 S.W.2d 946, 949 (Mo.Ct App.1997).

Although Plaintiff applied for different positions, she has presented no evidence that she was qualified for those positions and was refused them, or that she was prohibited from attempting to apply for positions for which she was qualified. The fact that Plaintiff may have been interviewed for open positions in no way rises beyond the speculative level to present evidence that Plaintiff was qualified for open positions and was refused the position.

Plaintiff submits the affidavit of Charles Landry in support of her opposition to Defendant's summary judgment. Mr. Landry, a former employee of Defendant, avers that "he felt that [Plaintiff] would be targeted for termination." This statement, however, is mere speculation and opinion, and fails to overcome the fact that Plaintiff violated the Code of Business Conduct and was therefore terminated.

Whether Gardner instructed him to find issues with employees that used leave and whether other Sales Coach Leaders have been allowed to move to hourly positions is immaterial to the reason for Plaintiff's termination of employment. Without a connection between Mr. Landry's averments and Plaintiff's termination, there is no evidence that the reason for discharge, *i.e.* the violation of the Code, was pretextual. "[F]ederal courts do not serve as 'super-personnel departments,' sitting in judgment of an employer's business decisions absent evidence of discrimination. *Hutson v. McDonnell Douglas Corp.,* 63 F.3d 771, 781 (8th Cir.1995)." *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 522 (8th Cir. 2010). Plaintiff cannot satisfy her burden to overcome Defendant's Motion for Summary Judgment.

In her response to Defendant's Motion, Plaintiff advises the Court that she no longer seeks to assert a claim for retaliatory discharge. As such, the Court will dismiss Count II of Plaintiff's Petition.

## Conclusion

Plaintiff has failed to establish that her employment was terminated because she is disabled under the Missouri Human Rights Act. As such, Defendant is entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, [Doc. No. 26], is granted.

**IT IS FURTHER ORDERED** that Count II of Plaintiff's Petition is voluntarily dismissed.

A separate judgment in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 14th day of April, 2015.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE